and so Mr. Atkinson, no rebuttal, you're not reserving any time. I did not reserve two minutes, your honor. Two minutes, okay. Alright, so that gives you eight out of the gate, and you may proceed. Thank you, your honor. Good morning, your honors, and may it please the court. Cameron Atkinson for the appellant, David Nastri. I'd like to begin with Antonyuk v. Tremento, the court's December 8th decision that I was unaware of at the time of filing Mr. Nastri's reply brief. I think Antonyuk addresses the key point I was struggling to make in my brief with respect to the Chilling Doctrine, which is the credible threat of prosecution component of the standing analysis is not a high burden for plaintiffs to meet. That was a criminal case, wasn't it? Antonyuk, your honor? That involved criminal charges? No, Antonyuk was a pre-enforcement challenge to... No, I know, but the issue was a possibility of criminal enforcement. Yes, your honor. This does not involve criminal enforcement. I would push back just slightly on that, that in our view is any regulation carrying the penalty of a fine does have a quasi-criminal component to it, and we see no reason why standing doctrine should be different in something where the lines are blurred, so to speak, as to a criminal component versus a purely civil component. But you do acknowledge it is correct, is it not, that the enforcement that he ran the risk of was purely a violation and not a crime? Under Connecticut law, it is an infraction and it would not be treated as a criminal offense, your honor. Is it fine to be barred from access to the state's parks? It's a $35 fine and up to a one-year ban from all Connecticut state parks, your honor. And again, just not to overbeat the point, but it is a quasi-criminal restraint. It is a restraint on his liberty to use those parks. And returning back to what we believe Antonyuk did, it properly recognizes that role of Babbitt versus United Farm Workers at juxtaposed to specific standing analysis in cases like knife rights, Cayuga Nation, and Silva versus Ferris. And general enforcement of the law, the fact that somebody's behavior is going to be covered by that law. And in the particular case of Babbitt, the government of the United States said that it may never enforce the law against the labor union there. And the Supreme Court still found standing. So to us, Antonyuk properly recognizes that that's not a high bar to meet, which leaves us with the district court's conclusion that this regulation is a moribund law. And to us, we can't find any recent cases defining what moribund means. We have to look at the case that established the moribund rule, which is Poe v. Ullman. And we're essentially in poll looking at extraordinarily exceptional facts there. Connecticut had not enforced its contraceptive ban in 80 years. An oral argument before the Supreme Court appellant's counsel specifically told the U.S. Supreme Court that you could walk into a Connecticut drugstore and buy contraceptives. They were being so open and notoriously to paraphrase the decision. And the only case, the only instance of prosecution at that point was a test case, State v. Nelson, that the U.S. Supreme Court described as a contrived case to get a ruling on the constitutionality of the law. Under those facts, that gives birth to the moribund law exception. And what we believe Poe and Doe v. Bolton, which applied the moribund language to it, requires either similar facts to that or a expressed disavowal from the government that it's not going to enforce the law. And we point to kind of a conjunctive example of Epperson v. Arkansas, where Arkansas' ban on teaching evolution in schools had been around 40 years. And Justice Black, in his concurrence, just hammered, is this really a case? Because the state's defense of the law was so weak. And the Supreme Court, even though it could have responded, raised the ending, didn't. So we juxtapose that to Poe. We think you should juxtapose Babbitt to Poe, where there was an express comment from the government that we may never enforce this law against you. Yet standing was still found in those cases. Here we have Colonel Chris Lewis of the State Environmental Police getting on the stand in the preliminary injunction hearing and doing his best Buford T. Justice impression that if I catch you out in the state park carrying a gun, I'm going to cite you. And possibly throw other criminal charges on there, too, if they're applicable. Mr. Nashry was sitting 10 feet away from Mr. Lewis when he said that. And if that isn't a clear indication that if he goes out into a state park carrying a gun, this law is going to be enforced against him, I don't know what is. To wrap up, I would just note that in the briefing in the district court acknowledged the state's defense or standing challenge was that Mr. Nashry hadn't alleged a particular time that he was going to go to a park. It's part of his customary routine, etc. And that was the basis for their credible threat of prosecution analysis. At no point in the preliminary injunction hearing in the briefing did Defendant Dykes raise the question of we're not enforcing this. We're not out there enough. It was never raised. And we were, frankly, caught off guard until the district courts, when the district court's decision came out because it wasn't an issue. And under McGinty, we thought we should have had an opportunity to brief that. I see I'm out of time. Thank you, Your Honor. All right, well, you've got two minutes for rebuttal. We'll now hear from Mr. Holtzman. Holtzman or Holtzman? The latter, Your Honor. All right, Mr. Holtzman, sorry for the mispronunciation. Thank you. It's okay. Good morning, Your Honors, and may it please the Court. I'm Assistant Attorney General Tim Holtzman, and I represent Commissioner Dykes in this appeal. With me at council table are my colleagues, Assistant Attorneys General Thaddeus Beauchesne and Blake Sullivan. Pre-enforcement challenges are the exception, not the rule. They are generally only used sparingly to permit plaintiffs to vindicate their rights without risking criminal or burdensome civil penalties. But the plaintiff in this case brought a challenge to a regulation that imposes only a $35 infraction and a temporary ban from the parks, even though he could raise his Second Amendment challenge as a defense if he ever were ticketed. Most importantly, the plaintiff has offered nothing but speculation that this regulation ever actually would be enforced against him if he did carry his handgun concealed in the three state parks and forests that he visits. Well, go ahead. You're saying he could raise a Second Amendment challenge if he was halted and fined? Yes, Your Honor. And then barred from state parks for a year? So before any of those penalties were actually imposed, he would have an opportunity to adjudicate that infraction in court if he wanted to. He could elect a trial, at which point the same procedures apply. And he could raise a Second Amendment defense at that point. You don't think that's daunting? I mean, he could mount a constitutional litigation. Wouldn't that inhibit him from wishing to go into a park with a gun? Well, Your Honor, it's certainly not on par with the typical circumstance in which this court has applied pre-enforcement challenges. And at the very least, I think that should be a significant factor that the court considers in what he has to show in order to establish Article III standing. But here, in terms of the credible threat of enforcement requirement, this court has been and there's multiple different expressions about what credible threat of enforcement means, but it's at least clear that at bottom, if the threat of future enforcement is purely speculative, that is not enough- Why is it purely speculative here? It's purely- You have the head of the park's police basically saying, yeah, we will enforce this. If we get calls on this, we'll come out. It doesn't seem to me to be speculative at all. Under Antoninuk, am I pronouncing that right? Antoninuk. Antoninuk? Antoninuk. I mean, all that there has to be is basically an articulable, plausible chain of events that would lead to a citation. Hasn't that been met here? So, a few things here, Your Honor. If I could start with that testimony that you're referring to. So, I'd say two things on that. So, that testimony, and we're talking about a single sentence of testimony about enforcement of this regulation in the record, and it doesn't really say anything about whether Mr. Nastry faces a credible threat of enforcement for his intended conduct because all it says is, we typically enforce absent extenuating circumstances, was essentially the line. But it doesn't say anything about what those circumstances are or how the individual officers would exercise their discretion in a given case. Or is the state disavowing enforcement of this provision? Well, we're not disavowing, Your Honor, but it's not our burden to disprove credible threats. But it seems like you kind of want it both ways. You want to use it to chill or to check people from engaging in this kind of conduct, but then when somebody tries to call you on it, you say, well, it's speculative. No, Your Honor, that's not what we're doing. And so, in order to establish, so the first requirement of pre-enforcement standing can be shown by saying, I would engage in this conduct, but I'm chilled from doing so. That is an entirely different question from whether you have a credible threat of enforcement if you actually were to engage in that conduct. And here, the reason it is speculative is because Mr. Nastry has been engaging in this intended conduct for many years. He's been carrying concealed in the three parks and forests that he goes to. We're talking thousands of occasions before he realized that this regulation existed. He said he's never seen an ENCON officer at any point in his years going to parks. There was no evidence presented at all that this regulation is enforced against those who carry concealed for self-defense as opposed to- Is it to show that there's no credible threat of enforcement? It's the plaintiff's burden to establish each element of standing with the requisite proof at the preliminary injunction stage. That would include the credible threat of enforcement. So, it's the plaintiff's burden. We describe that, or you describe that, as a quite forgiving requirement. It sets up only a low threshold for a plaintiff to surround. It may be a low threshold- Get to your officers and figure out what are the extenuating circumstances under which they would actually enforce this. They've already said they're going to come out and investigate these things, but there might be some reasons why they won't. And it's his job to figure out what those reasons are. I don't think that's the primary problem with why the record is insufficient in this case. The primary problem is that you have to show a credible threat that if you engage in the conduct, it will actually result in some kind of enforcement action. And that entails an inquiry into the likelihood under the circumstances of a given case that it will actually take place. In Antonyuk, for example, the court was talking about the brazen nature of the plaintiffs in those cases, their intended defiance, which it said would make it more likely to be noticed and reported by somebody in a park. And that was one of the key factors that the court relied on.  Why isn't this brazen? The man says, I've been doing it for years and I'm going to keep doing it. Well, in Antonyuk, the plaintiff was saying, and this is talked about more extensively in the district court decision, but it said that they considered this law offensive and it violated their rights and their religious views and that it was an act of civil disobedience. And there was, in footnote 51 of Antonyuk, there was mention of additional facts that they had alleged, including one plaintiff who had said that he had encountered NCON officers while he was fishing, which makes it more likely. Again, there's nothing in the record here that would show that. There are, however, scores of officers enforcing or who would be charged with enforcing this on the payroll of the state. I didn't hear that there were scores of officers?  So there are 52 NCON officers. That's correct. And so- Well, they're doing something, presumably. They're looking for people who violate the rules on the use of the parks. Well, that's part of the point, Your Honor. We have 142 state parks and forests all over the state, 255,000 acres. We have about 17 million people coming in and out every single year. And 52 NCON officers and a handful of seasonal park rangers that are there, depending on the season and the location. But so what the plaintiff has to show in this case is that there's at least some non-speculative basis to believe that if he continues to engage in the conduct that he's been engaging in for many years, that it will actually be enforced against him. And there's just nothing in this record that would establish that. I'm quoting again, Antonia. We do not place the burden on the plaintiff to show an intent by the government to enforce the law against him, but rather presume such intent in the absence of a disavowal by the government. And you're not disavowing, right? I'm not dis- On the record today, are you disavowing, on behalf of the state of Connecticut, any intent to enforce this provision? Your Honor, I'm not disavowing, but what this court has said is that the general presumption of enforcement without something more is not enough to establish a credible threat of enforcement. The court said that in Adam V. Barr, which it reaffirmed- I'm quoting Antonia. Well, that part of Adam V. Barr is- That part of Antonia doesn't count, you think? Dicta, what? Can you say that again? I'm sorry. I mean, that part of Antonia is not, is dicta? You're saying that that's not something we should be relying on? No, I'm not saying it's dicta, Your Honor. I'm saying that viewed in full context of the statement of the law provided in Antonia, what the court is saying is that it may be one- we presume an intent to enforce the law absent a disavowal, but that in and of itself without something more particularizing the threat as to a particular plaintiff, that doesn't establish a credible threat of enforcement. And if you look at all the cases recognizing the presumption of enforcement, there's always something more in those cases. In Antonia, for example, there was the brazen nature that I talked about. There was a statement from the superintendent of police- In this case, the plaintiff's habit was to conceal his carriage of the weapon. Is that correct? That's correct. And so in Antonia, there was a statement from police about a zero-tolerance policy of enforcement. In Knife Rights, there was a prior enforcement actions for the same conduct. Cayuga Nation, there was a threat. But here we have the chief of Connecticut's Environmental Protection Police saying he trains the officers on this, that they're sent out to respond to calls involving unauthorized firearms, and they would take enforcement action against somebody who violates this provision. What more do you need? He has to prove that they might actually catch him? He needs to establish some evidence, some chain of events, that plausibly would result in him being prosecuted for this. And the fact that he said- The fact that they train, send out officers, and would take enforcement action. Why doesn't that fit the bill? That doesn't deal with the problem about whether any enforcement- I mean, Mr. Nassery isn't saying that his intended conduct is to go into a park and wave a firearm around or do something that would elicit or attract that type of response. He's saying he wants to carry it concealed while he goes on a hike. And he's been doing that for decades. You're saying he has to prove that he's likely to get caught? He needs some evidence to make out a plausible chain of events that are not entirely speculative,  You're saying that really they're just a couple dozen officers for hundreds of parks, but the record reflects that the law would be enforced against this plaintiff if somebody complained. That is to say, if somebody in the park complained that this person has a gun, then the state would respond. So that really multiplies, maybe by a thousand, the number of possible people who can report the offense. Well, that testimony wasn't about necessarily this regulation. That was just about how reports are coded. In terms of if somebody reports something that's a safety concern, it's going to get a higher priority and people go out. Is a gun a safety concern in a park? It could be. It could be, depending on the circumstances. But that requires speculation about what an individual person is going to perceive and how they're going to react and what they're going to do about it. And it also requires speculation about how an ENCON officer would react in a particular situation. But most importantly, it also requires speculation about whether the question would even arise because the plaintiff's intended conduct is just to carry concealed while he's going on a hike. And so I see that I'm out of time. If the court has any further questions, I'm happy to answer them. Otherwise, I'll rest on the brief. All right. Thank you, Mr. Holzman. Thank you, Your Honor. We'll now hear from Mr. Atkinson for two minutes of rebuttal. So the first point I'd raise is we're dealing with more than a single sentence of testimony. In our appendix at page 180, Colonel Lewis explained the regular practice of responding to calls from the general public reporting violations at 188. He described the ranking of reports, specifically as to triage, explained that firearms reports received the highest ranking possible because they are always a public safety concern. And then at page 190, he did state his threat to charge if they caught somebody out there. The other point that I wanted to make is my colleague raised the point of raising a Second Amendment defense to these charges in a proceeding that Commissioner Dykes adjudicates. We take issue with that because I'm sure the court's aware under the new Bruin test, the first step is a textual analysis. And to obtain textual protection under the Second Amendment, you have to be a law-abiding citizen. Mr. Nashry gets caught with a gun in a state park. And the first conclusion that Commissioner Dykes and whoever the hearing officer over at DEEP reaches is that you're not a law-abiding citizen. This is Mr. Nashry's only way to protect his Second Amendment rights in state parks. And it is necessary. We provided evidence at the trial court of a Yale law student being the victim of an attempted rape at a Connecticut state park. Mr. Nashry has shown standing. We'd ask you to find it. Thank you. We will reserve decision.